TUDOR BOILER MFG. CO. v. I. & E. GREENWALD COMPANY.

1. EQUITY WILL NOT ASSUME THE DETERMINATION OF TITLES, AS A GENERAL RULE.
    Equity rarely assumes the determination of questions of title, but generally relegates the parties, in such cases, to courts of law before affording equitable relief. A *fortiori*, when the issues involved, such as "abandonment" and "adverse possession," are peculiarly appropriate to an action at law, and triable to a jury, and would, if fairly submitted to a jury under proper instructions from a court of law, end the controversy if plaintiff prevailed.

2. POWER OF EQUITY TO ENTERTAIN LEGAL ACTIONS TO AVOID MULTIPLICITY OF SUITS.
    Discretionary power is invested in a court of equity, in order to avoid a multiplicity of suits, to entertain actions which otherwise would be legal in their nature; but in all cases there must be a showing of the probability of such multiplicity of suits.

3. NONUSER OF EASEMENT MAY OR MAY NOT WORK ABANDONMENT.
    Nonuser of an easement for more than twenty-one years may, or may not be sufficient to indicate its abandonment, according to surrounding facts and circumstances which either weaken or strengthen it. An intention to abandon an easement for roadway purposes is shown by the following facts: nonuser for more than twenty-one years; the erection, by claimant, of a building which effectually destroys access to, and makes impossible any use of the way in question; the erection, by a second party and without objection of claimant, of a permanent sand shed at such place as to render it inconsistent with the existence

Manufacturing Co. v. Greenwald Co.

of a way over the part occupied by it, and which is also a substantial obstacle to its access by claimant; and the fact that the way was, for several years, continuously and with claimant's acquiescence, covered with cores and flasks from second party's factory.

4. ADVERSE USE OF EASEMENT BY OWNER OF FEE SHOWN, WHEN.

The owner of the fee has all the uses incident to the property not inconsistent with the dominant estate, and until the exercise of the easement is asserted, any use by the owner of the fee is not in itself adverse.

5. EXERCISE OF DOMINION OVER ROADWAY CONSTITUTES ADVERSE POSSESSION.

Adverse possession is shown by the exercise of dominion over a strip of land over which another claims a roadway, treating it as an appurtenant to adjoining property, erecting permanent buildings thereon, enclosing part of the way with a fence and paying no respect to its use as a roadway, for more than twenty-one years.

ERROR to Hamilton common pleas court.

**Kinkead & Ellis** and **Paxton & Warrington,** for plaintiff in error.

**Herron, Gatch & Herron,** for defendant in error.

## PER CURIAM.

The arguments and briefs of counsel have substantially disposed of all questions involved herein, excepting three, which are:

First. Whether or not plaintiff can maintain this suit for an injunction.

Second. Whether or not the Tudor Boiler Manufacturing Company had abandoned this easement; and

Third. Whether this easement had been extinguished by the adverse possession of the I. & E. Greenwald Company.

On the first point, a majority of the court is of opinion that the issue involved herein ought not be tried in a court of chancery, unless the clearest necessity therefor appears. We have no doubt that a court of equity has a right to entertain this action, but it does not follow that plaintiff can maintain the same as a matter of right, and we are not satisfied as to the propriety of the court entertaining it.

The issues triable herein are first, that the abandonment, which turns up the issue of fact of the intention of the Tudor Boiler Manufacturing Company. This is an issue of fact peculiarly appropriate to an action at law, and triable to a jury. The issue of adverse possession turns upon the existence or nonexistence of the essential facts necessary under the laws of Ohio to constitute adverse possession. These issues of fact are likewise appropriate to a suit at law, and triable to a jury. All of these issues go to the question of title, and courts of chancery rarely assume the burden of questions of title, and even where equitable remedies are necessary, a court of chancery usually relegates parties to a

determination of questions of title to a court of law before affording equitable relief.

It is claimed that the right to maintain this action herein rests upon the expediency of avoiding a multiplicity of suits. This is a ground upon which a court of chancery may entertain actions which otherwise would be legal in their nature, but this is an appeal to the grace of a court of equity to take up and try matters admittedly legal in their nature. In order to invoke this intervention of a court of chancery, there should be a showing of the probability of a multiplicity of suits, and then it is for the court, upon finding such probability, to extend its grace, or not, as it deems wise in the interest of equity and justice. It is an appeal to the jurisdiction of the court of equity wherein the plaintiff admits that he has no standing as a matter of right. In the case at bar, the court finds no reason to believe that there will be a multiplicity of suits at law. On the contrary, we are of opinion that if the issues involved herein were once fairly submitted to a jury under proper instructions from a judge of a court of law and the plaintiff prevailed, it would end this controversy.

We are of opinion that plaintiff ought not to appeal to a court of equity to try these issues until it has established its title by at least one action at law. The court does not come to this conclusion through any unwillingness to sustain the burden of deciding these issues, but because it feels that this cause turns upon such close and evenly balanced issues of fact that a satisfying determination of the same can only be reached by a submission to a jury. We are therefore of opinion that the plaintiff herein is not entitled to maintain this proceeding, and that an injunction should be denied, at least for the present, and that plaintiff should be required to first establish its present right of title, by at least one action at law.

Lest, however, we should be mistaken in this conclusion, the whole court has preferred to consider the essential questions submitted. The question of abandonment is purely one of intention on the part of the Tudor Boiler Manufacturing Company. This intention can only be ascertained from all the declarations and the acts of the parties coupled with the surrounding circumstances. The first significant fact is the nonuser by the Tudor Boiler Manufacturing Company, for a period longer than twenty-one years—clearly from 1857 to 1879. During this time, without conflict in the testimony, the Tudor Boiler Manufacturing Company did not use this right of way in question. Nonuser for this long period of time may or may not be sufficient to indicate an abandon-

ment. In Nail & Iron Co. v. Furnace Co. 46 Ohio St. 544 ,[22 N. E. Rep. 639; 5 L. R. A. 652], it is held by the Supreme Court:

"If nonuser of such road may work an abandonment of it, the nonuser must be shown to have extended over a period of twenty-one years."

Hence, nonuser, for a period of over twenty-one years, may itself be a sufficient fact from which to find the intention of abandonment. The nonuser for this period, however, may be accompanied by other facts and circumstances which either weaken or strengthen it. In the case at bar we have the fact that on January 17, 1876, at a meeting of the directors and stockholders of the Tudor Boiler Manufacturing Company, at which Mr. Isaac Greenwald was present, action was taken to notify the I. & E. Greenwald Company that the Tudor Boiler Manufacturing Company claimed the opening of a forty foot strip, running from their highway to Eggleston avenue, the rear of the ground purchased by them from Niles & Company, and they required said street to be opened. This is evidence tending to contradict any intention of abandonment. It does not appear, however, that any formal action was taken to notify the I. & E. Greenwald Company—that they merely relied upon the fact that Mr. Isaac Greenwald was present, and was a member of the Tudor Boiler Manufacturing Company—and no formal steps were taken to open said street at law, and no physical action was taken to open said street in fact. It might be said, as to a third person, a case "where actions spoke louder than words." This is especially so, for at that time the relation existing between the Tudor Boiler Manufacturing Company and the I. & E. Greenwald Company was of the utmost cordiality, and it was to the interest of both these that these relations be maintained.

Subsequently, by resolution of the Tudor Boiler Manufacturing Company, the I. & E. Greenwald Company was charged one dollar per annum for the use of this right of way, and this annual charge of one dollar was paid for a number of years thereafter, in the course of mutual accounting of business transactions. This payment of one dollar per annum began in the year 1879. As set out in the brief for plaintiff, evidently the only value this payment has is that it "illustrates the past," it being admitted that had the Tudor Boiler Manufacturing Company, by this time, lost this right of way by abandonment, such payment could not recreate it. As an illustration of the past, this annual charge has not the significance that it would have if it stood alone. It is so involved in other business transactions of large proportion—a settlement of which was mutually desirable—that not much point would be made of a small item of this kind, and among business men, if it be yielded, it might be for the purpose of buying peace.

As opposed to these circumstances, we have the fact that the Tudor Boiler Manufacturing Company erected an office building directly across the end of this forty foot strip; and by this building of its own construction, effectually shut itself off from access to the same, and from any use of the easement now claimed by it. The significance of this fact, on the part of the Tudor Boiler Manufacturing Company, is well illustrated by contrasting the case of Stokoe v. Singers with the case of Regina v. Chorley, 12 Q. B. 515, both of which cases involved the question of ancient lights. In the former, the windows were closed by a covering temporary in its nature; in the latter, the windows were closed in a manner permanent in its nature. In the former, the court held that an intention to abandon was not thereby indicated. In the latter, on the contrary, the court held that the party, by its action, had clearly indicated his intention to abandon his right to light. The case at bar is one of an easement for roadway purposes, and the structure built by the Tudor Boiler Manufacturing Company is one which effectively shut its property off from all access to this roadway, and made the use of the same at this end impossible. It clearly indicates an intention upon the part of the Tudor Boiler Manufacturing Company to abandon this right of easement for a roadway in this forty foot strip. In addition, we have the existence of the sand shed, which was constructed by the I. & E. Greenwald Company, a permanent structure necessary to the latter's business, and inconsistent with a right of way over the part of the forty foot strip covered by it, and a substantial obstacle to access at the end of said strip to and from it, and the property of the Tudor Boiler Manufacturing Company.

We have likewise the fact that during the period from 1857 to 1879, this forty foot strip was continuously covered with a greater or less number of cores and flasks.

We are now considering these latter two items, not on the issue of adverse possession, but as collateral facts and circumstances, and the fact that they existed so long in plain view of the Tudor Boiler Manufacturing Company, so completely destroying any use of the roadway of this forty foot strip and without objection, and for the most part with the acquiescence of the Tudor Boiler Manufacturing Company, as indicating the attitude of mind, to wit, the intention to abandon on the part of the Tudor Boiler Manufacturing Company. Thus marshalling the facts as they appear on this issue, we find that a preponderance is clearly in favor of an intention to abandon on the part of the Tudor Boiler Manufacturing Company, and that the same became

Manufacturing Co. v. Greenwald Co.

and was thereby abandoned, and no subsequent acts of the parties has ever re-established it.

A great deal has been said about the deeds from Fox and Longworth, and it is claimed that the recitals in the same, accepted by the I. & E. Greenwald Company, recognize these easements. Be that as it may, these do not affect in any way the question of intention upon the part of the Tudor Boiler Manufacturing Company.

We come now to the question of adverse possession. The facts which the defense herein relied upon to maintain this defense are not much in dispute. It is claimed, however, that the use by the I. & E. Greenwald Company of this forty foot strip as a depository for their cores and flasks, in view of the fact that the I. & E. Greenwald Company held the fee of said strip, is not a user of the same, in its nature necessarily adverse to the easement claimed by the plaintiff. It is a familiar doctrine that, inasmuch as the owner of the fee has all the uses incident to a piece of property not inconsistent with a dominant easement, that until the exercise of such right or easement is asserted, any use by the owner of the fee is not in itself adverse.

This furnishes somewhat of an answer to the obstruction by the cores and flasks, but does not answer the interposition of the permanent, substantial sand shed, which by its very nature is a denial of any right of roadway use in this strip. Furthermore, at some time between 1857 and 1879, the I. & E. Greenwald Company built a substantial fence along the north side of this roadway, and continuously maintained the same.

It is extremely difficult, from the testimony, to determine whether or not any or all of these obstructions continued over the whole period of time, but we have no difficulty in finding that from 1857 to 1879 the I. & E. Greenwald Company exercised dominion over this strip and treated it practically as an appurtenance to their foundry, and paid no respect to any use of the same as a roadway. It is claimed that by acceptance of the Fox and Longworth deeds, and in other ways, the I. & E. Greenwald Company admitted the title of the Tudor Boiler Manufacturing Company for this easement. Such an admission is hardly important and not at all controlling on the issue of adverse possession— adverse possession, by its nature, being to destroy an admitted title and to wrest away by physical holding property rights, the title to which may be in another. On this issue the court is not so strong in its conclusion as on the issue of abandonment, but on this, too, we find in favor of the defendant.

We are therefore of opinion that an injunction should be denied.